FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 06, 2017

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

BRIAN ADAMS,

Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]

Defendant.

No. 2:15-CV-00353-JTR

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**BEFORE THE COURT** are cross-Motions for Summary Judgment. ECF No. 15,[2] 16. Attorney Randi L. Johnson represents Brian Adams (Plaintiff); Special Assistant United States Attorney Ryan Lu represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a

[1]Nancy A. Berryhill became the Acting Commissioner of Social Security on January 20, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

[2]The Court requests that future filings conform with Local Rules 7.1(e) and 10.1(a)(2), including a typeface of 14 points or more.

magistrate judge. ECF No. 6. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

## JURISDICTION

Plaintiff filed applications for Adult Disabled Child Insurance and Supplemental Security Income (SSI) Benefits on February 3, 2012, alleging disability since December 25, 1985,[3] due to low IQ scores, torn ACL, knee injury, depression, attention deficit hyperactivity disorder (ADHD), learning disability, memory, slight blindness, obesity, and trouble standing and walking. Tr. 274-282, 334, 338. The applications were denied initially and upon reconsideration. Tr. 171-177, 179-183. Administrative Law Judge (ALJ) R.J. Payne held hearings on November 18, 2013, and February 24, 2014, and took testimony from Reuban Beezy, M.D., Stephen Rubin, Ph.D., and Margaret Moore, Ph.D. Tr. 38-69. ALJ Moira Ausems held a hearing on May 22, 2014, and heard testimony from Plaintiff and vocational expert K. Diane Kramer. Tr. 70-98. ALJ Ausems issued an unfavorable decision on July 24, 2014. Tr. 12-31. The Appeals Council denied review on November 20, 2015. Tr. 1-6. The ALJ's July 24, 2014, decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on December 22, 2015. ECF No. 1, 4.

---

[3]Child Benefits based on the disability of the child are not payable until the child's eighteenth birthday, 20 C.F.R. §§ 404.350, 404.351, and SSI Benefits are not payable prior to the application date, 20 C.F.R. §§ 416.202, 416.501. Therefore, the relevant time period for eligibility begins with Plaintiff's eighteenth birthday, December 25, 2002.

**STATEMENT OF FACTS**

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 18 years old at the beginning of the relevant time period. Plaintiff completed the twelfth grade in 2005. Tr. 339. As part of his education, Plaintiff was enrolled in special education courses. *Id*. Plaintiff additionally took some caregiving classes in 2011. *Id*. Plaintiff was working as a caregiver at the time of the application. *Id*. Additionally, Plaintiff had past work experiences caring for animals in a doggie daycare. *Id*.

**STANDARD OF REVIEW**

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied

in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

**SEQUENTIAL EVALUATION PROCESS**

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once the claimant establishes that physical or mental impairments prevent him from engaging in his previous occupations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs exist in the national economy which the claimant can perform. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

**ADMINISTRATIVE DECISION**

On July 24, 2014, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since December 25, 2003, the beginning of the relevant time period. Tr. 15.

At step two, the ALJ determined Plaintiff had the following severe impairments: borderline intellectual functioning; Attention Deficient Hyperactivity Disorder (ADHD); major depressive disorder; marijuana dependence; morbid obesity; and right knee torn ACL with degenerative joint disease. Tr. 15.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 15.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined he could perform a range of light work with the following limitations:

> The claimant is able to stand/walk for a total of two hours in an eight hour workday and sit for a total of six hours in an eight hour workday. He is able to lift/carry 20 pounds occasionally and 10 pounds frequently. He is not able to climb ladders, ropes, or scaffolds and he can occasionally climb stairs and ramps. He is not able to kneel, crouch, or crawl and he can occasionally stoop and balance. He needs to avoid hazardous machinery, unprotected heights, and commercial driving. The claimant is able to perform simple and routine tasks. He needs supportive supervision, but not an accommodated setting.

Tr. 18. The ALJ concluded that Plaintiff had no past relevant work. Tr. 30.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of sorter, electrical assembler, and mail clerk. Tr. 31. The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from December 25, 2003, through the date of the ALJ's decision, July 24, 2014. Tr. 31.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to consider lay witness testimony; (2) failing properly consider whether Plaintiff met listing 12.05C; (3) failing to properly weigh medical opinions; and (4) failing to meet her burden at step five.

## DISCUSSION

### A. Lay Witness Testimony

Plaintiff challenges the ALJ's failure to discuss the statement of Plaintiff's mother, Denise Adams. ECF No. 15 at 5.

An ALJ is required to consider evidence from "other sources," including the evidence from family and friends, 20 C.F.R. §§ 404.1513(d), 416.913(d), "as to how an impairment affects a claimant's ability to work," *Sprague*, 812 F.2d at 1232. An ALJ must give reasons that are "germane" to each whiteness to discount the testimony of each lay witness. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

On September 23, 2013, Ms. Adams wrote a letter regarding Plaintiff's educational history and functional limitations. Tr. 416-418. Specifically, Ms. Adams detailed Plaintiff's attendance in special education courses, his social interactions during his school years, and some of his work history. *Id.* The ALJ's decision is void of any reference to the letter. Tr. 12-31.

The ALJ's failure to consider Ms. Adams' letter is error. *See* 20 C.F.R. §§ 404.1513(d), 416.913(d). However, Defendant argues that this error was harmless because Ms. Adams' statements were not significantly different from Plaintiff's statements and the ALJ provided legally sufficient reasons for rejecting Plaintiff's testimony. ECF No. 16 at 9-10, *citing Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012). However, a review of Plaintiff's testimony provided at the hearing shows that while there were some similarities between the testimony and Ms. Adams' letter, such as his history of special education, getting fired for leaving the door open while working for the dog groomer, and his difficulty getting along with individuals in authority, Tr. 80-82, 90, Ms. Adams' letter addressed additional subjects not covered by Plaintiff's testimony, such as his difficulties with personal hygiene, his threatening postures towards students and teachers, his difficulty focusing, and that his special education program involved being isolated from the

general population at school by using a different entrance, not being allowed in the hallways without an adult, and not being able to eat with the other students, Tr. 416-418. As such, *Molina* is not applicable to this case and a remand is necessary for the ALJ to properly consider, discuss, and weigh Ms. Adams' letter.

**B. Listing 12.05C**

Plaintiff argues the ALJ erred at step three in finding that Plaintiff did not meet listing 12.05C. ECF No. 15 at 7-10.

At step three of the sequential evaluation for disability, a claimant must establish that he has an impairment that meets or equals a listed impairment. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). To satisfy Listing 12.05C, a claimant must show he has the following: (1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) a valid verbal, performance, or full scale IQ score of 60 to 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05C; *Kennedy v. Colvin*, 738 F.3d 1172, 1175-1176 (9th Cir. 2013). POMS DI 24515.020 states that "IQ scores tend to stabilize by the age of 16. Regardless of the claimant's age at adjudication, reliable IQ testing obtained at age 16 or older is valid to support the IQ findings required under listing 12.05."

The ALJ found that Plaintiff had borderline intellectual functioning rather than an intellectual disability. Tr. 17. She further found that while Plaintiff's childhood IQ testing showed verbal IQ scores of 70, she found the IQ testing administered during adulthood were more reliable giving weight to the opinion of the psychological expert. *Id*. Therefore, the ALJ found Plaintiff did not meet Listing 12.05C. *Id*. In her briefing, Defendant conceded that Plaintiff met the third prong of Listing 12.05C, but argued that the ALJ found Plaintiff lacking in the first two prongs. ECF No. 16 at 6.

In 1994, at the age of 8, Plaintiff had a verbal IQ of 66, a performance IQ of

83, and a full scale IQ of 73. Tr. 657. In 1997, at the age of 11, Plaintiff had a verbal IQ of 72, a performance IQ of 81, and a full scale IQ of 75. Tr. 645. In 1998, at the age of 12, Plaintiff had a full scale IQ of 78, verbal IQ of 70, and performance IQ of 87. Tr. 422, 725. In 2000, at the age of 14, Plaintiff had a full scale IQ of 73, a verbal IQ of 70, and a performance IQ of 80. Tr. 422, 683, 685. In 2003, at the age of 17, Plaintiff had a verbal IQ of 63, a performance IQ of 89, and a full scale IQ of 74. Tr. 699. In 2010, at the age of 24, Plaintiff had a full scale IQ of 77, a verbal comprehension of 81, a perceptual reasoning of 86, a working memory of 74, and a processing speed of 79. Tr. 432. In 2012, at the age of 26, Plaintiff had a full scale IQ of 83, a verbal comprehension of 80, a perceptual reasoning of 98, a working memory of 80, and a processing speed of 86. Tr. 529. In 2013, at the age of 27, Plaintiff had a full scale IQ of 84, a verbal comprehension of 87, a perceptual reasoning of 96, a working memory of 74, and a processing speed of 86. Tr. 728, 734.

First, the ALJ only considered the 1998, 2000, 2010 and 2012 scores in considering Listing 12.05C. Second, the ALJ found that the intelligence testing as an adult was more reliable than the testing performed as a child, citing testimony from "the psychological expert." Tr. 17. Two psychological experts testified at different hearings in this case: Dr. Rubin and Dr. Moore. Dr. Rubin testified that there must have been some error in the 2012 intelligence testing, at age 26, because Plaintiff had an uncharacteristic matrix reasoning score of 15. Tr. 47-48. Likewise, Dr. Moore testified that the provider who administered the 2012 intelligence testing "did this claimant a disservice and really did not really carefully look at her own testing results." Tr. 6. Dr. Moore concluded that the 2012 testing showed a learning disability and not overall borderline intellectual functioning. *Id*. She further testified that Plaintiff's subtests scores across time supported a learning disorder. Tr. 61-62.

The ALJ was nonspecific as to which expert she was referring to when she

concluded that "the psychological expert" inferred that adult scores were a more reliable source for claimant's current cognitive abilities. Tr. 12. However, a review of the testimony from both psychological experts does not support this conclusion as Dr. Rubin questioned the validity of the 2012 testing and Dr. Moore questioned the provider's reading of the 2012 testing. Additionally, the ALJ gave no weight to Dr. Rubin's opinion and only little weight to Dr. Moore's opinion. Tr. 26-27. Therefore, substantial evidence does not support the ALJ's conclusion that adult scores were more reliable than childhood scores when determining if Plaintiff met or equaled 12.05C.

This case is remanded for the ALJ to properly consider all the intelligence testing in the file and to make a new step three determination that is supported by substantial evidence. Additionally, the Court notes that neither Dr. Rubin nor Dr. Moore provided any testimony as to Listing 12.05C. Tr. 47-53, 63-64. Considering the low IQ scores prior to age 22, the ALJ is instructed to take testimony from a psychological expert specifically regarding whether or not the record supports Plaintiff meeting or equaling Listing 12.05C.

**C. Medical Opinions**

Plaintiff argues the ALJ failed to properly consider and weigh the medical opinion expressed by state agency medical consultants and Plaintiff's treating physician as to Plaintiff's physical limitations. ECF No. 15 at 11-16.

Considering the case is being remanded for the above stated reasons, the ALJ will reweigh the medical opinions in the file for both claimant's physical and psychological limitations.

**D. Step Five**

Plaintiff argues the ALJ failed to meet her step five burden by posing an incomplete and vague hypothetical to the vocational expert. ECF No. 15 at 16-19. She argues that the difference between the two hypotheticals given to the vocational expert were requiring "supportive and fairly frequent supervision,"

which resulted in Plaintiff being unemployable and requiring "fairly close supervision," which resulted in Plaintiff being employable. ECF No. 15 at 18.

An ALJ is only required to present the vocational expert with those limitations the ALJ finds to be credible and supported by the evidence. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001).

A review of the hearing transcript revels that in the first hypothetical, the ALJ presented a full residual functional capacity determination, including the statement from the state agency psychologist that "the claimant's capable of simple, routine task, with fairly close supervision. So in other words, a setting [*sic.*] there would be, there would monitoring of the performance of the task and all that statement might entail." Tr. 94. This hypothetical resulted in jobs. Tr. 95-96. In the second hypothetical, the ALJ added the following limitation to the first hypothetical: the claimant "would require supervisory contact that is supportive and fairly frequent. Fairly frequent was designed as him needing to be shown what to do in a hands on, visual manner. The supportive supervisor would need to keep him on track and minimize the social demands that he would have." Tr. 96. This additional limitation resulted in no jobs being available in the national economy as it tipped the claimant into a sheltered work environment. Tr. 97.

While Plaintiff argues the difference between the two hypotheticals is vague, it was sufficient enough for the vocational expert to make the determination that one was sheltered work and the other was not. The Ninth Circuit, has held that an ALJ's reliance on testimony the vocational expert gives in response to a hypothetical is proper. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). "An ALJ may take administrative notice of any reliable job information, including information provided by a [vocational expert]." *Id.* (citing *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995)). As such, the hypotheticals as presented were not in error. However, because this case is being remanded and lay witness testimony is to be considered and medical opinions are to be reweighed, the ALJ is instructed

to call a vocational expert at subsequent proceedings and present new hypotheticals based on a new residual functional capacity determination.

## REMEDY

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Secretary of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990). *See also Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

In this case, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated. Further proceedings are necessary for the ALJ consider lay witness testimony in the file, properly address Listing 12.05C, reweigh the medical opinions, and seek testimony from a psychological expert and a vocational expert.

## CONCLUSION

Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

3. Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Plaintiff and the file shall be CLOSED.**

DATED March 6, 2017.




JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE